UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa Krapf,<br><br>Plaintiff,<br><br>v.<br><br>Novartis Pharmaceuticals Corporation,<br><br>Defendant. | Case No. 20-cv-2672 (DSD/JFD)<br><br><br><br>**ORDER** |

This matter is before the Court on Plaintiff Lisa Krapf's Motion to Compel Discovery and Motion Pursuant to Rule 30(d)(3) (Dkt. No. 70) and Defendant Novartis Pharmaceuticals Corporation's Motion to Compel Discovery, for Additional Time to Complete Plaintiff's Deposition, and for Sanctions (Dkt. No. 72). The Court held a hearing on the motions on May 20, 2022. Amy Boyle and Christopher Moreland, Esqs., appeared for Plaintiff, and Michael McIntyre and Katherine Ondeck, Esqs., appeared for Defendant. The Court ruled from the Bench in part, as set forth in the Court Minutes (Dkt. No. 101), and took the remainder of the motions under advisement. This written Order resolves the remaining disputes.

**I.     Plaintiff's Motion to Compel**

Plaintiff worked for Defendant as an Area Business Leader ("ABL") and manager of the Cardiovascular ("CV") Sales Team in the Midwest Region from January 2015 through August 9, 2019. (Am. Compl. Facts[1] ¶¶ 1, 43, Dkt. No. 30.) She is suing Defendant

---

[1] The paragraphs of the Amended Complaint are not consecutively numbered throughout

for sex discrimination, reprisal, whistleblower retaliation, and creation of a hostile work environment. (Am. Compl. Causes of Action[2] ¶¶ 44–72.) The alleged wrongdoers were Plaintiff's supervisors: Conrad McCrary and McCrary's successor Matthew Zeller. (*E.g.*, Am. Compl. Facts ¶¶ 4–5, 7–12, 36, 38, 41.) McCrary and Zeller allegedly treated Plaintiff in a discriminatory manner, subjected her to harassment and a hostile work environment, and retaliated against her for reporting discrimination and unfair treatment. (*E.g.*, Am. Compl. Facts ¶¶ 4, 5, 9, 12, 23, 29, 35–36, 38.) Human Resources staff, including Associate Director of Human Resources Sandy Avery, were not helpful or responsive to her complaints. (*E.g.*, Am. Compl. Facts ¶¶ 10, 25.) Plaintiff also alleges that she witnessed and heard about discrimination against other female employees. (*E.g.*, Am. Compl. Facts ¶¶ 3, 26–27, 30.)

In furtherance of her claims, Plaintiff sought discovery from Defendant about other employees who were supervised by McCrary or Zeller, or who had complained of discrimination, filed lawsuits, or filed administrative charges against Defendant. Plaintiff also requested the personnel files of all such individuals. In response, Defendant identified 11 individuals who were ABLs in the CV field force, under the same supervision as Plaintiff, during Plaintiff's employment. Defendant did not provide any information about lawsuits or administrative charges and identified only one complaint against McCrary. Plaintiff also learned from Defendant's initial discovery responses about Business

---

the pleading. The first and third sections (Parties and Facts) both begin with paragraph 1. Therefore, the Court includes the name of the section with the paragraph number.

Practices Office ("BPO") reports. According to Defendant, the BPO "triages concerns brought forward and assigns them to the appropriate department for investigation." (Def.'s Mem. Opp'n at 7, Dkt. No. 95.)

Plaintiff now moves to compel discovery about similarly situated employees.[3] Her most recent proposal for the scope of such discovery, made during the meet-and-confer process, was:

> (1) the 11 individuals identified by Defendant as ABLs in the CV field force at the same time as Plaintiff and under the same supervision as Plaintiff; and
>
> (2) of the female sales representatives who reported directly or indirectly to McCrary since January 1, 2015, any:
>
> - who filed a BPO, NBPO, or Inquiry[4] regarding an allegation of discrimination or any form of noncompliance with a law or regulation occurring at Defendant since January 1, 2015;
>
> - who threatened or brought a lawsuit or administrative charge alleging any form of discrimination or noncompliance with a law or regulation against Defendant since January 1, 2015; or
>
> - who filed a BPO, NBPO, or Inquiry regarding being discriminated or retaliated against by McCrary.

---

[3] Plaintiff uses the term "comparators" to describe similarly situated employees. Some courts use the term "comparators" to refer to employees who were "similarly situated in all relevant respects." *E.g.*, *McKey v. U.S. Bank Nat'l Ass'n*, No. 17-CV-5058, 2018 WL 3344239, at *2 (D. Minn. July 9, 2018). Other courts use the term "comparators" to refer to employees who were similarly situated but were *outside* of the plaintiff's protected class. *E.g.*, *Chevalier v. Supply Techs., LLC*, No. 14-CV-4644, 2016 WL 5946865, at *5 (D. Minn. Oct. 12, 2016). This Court understands that Plaintiff is seeking discovery of similarly situated employees who were within her protected class, because she is seeking discovery about female sales representatives.

[4] Plaintiff did not explain in her motion filings what an "NBPO" or "Inquiry" is, but Defendant used those terms to classify other reports of retaliation and discrimination (*see* Boyle Decl. Ex. 3, May 6, 2022 (Dkt. No. 92)), so the Court considers "NBPOs" and "Inquiries" to be fairly requested and in dispute.

3

(Pl.'s Mem. Supp. at 11.) Defendant's most recent proposed scope was (1) the ABLs who reported to McCrary, (2) who complained of the same employment practices at issue in the case, (3) between January 1, 2017 and August 16, 2019. (Def.'s Ex. 8 at 4, Dkt. No. 96-8.)

Federal Rule of Civil Procedure 26(b)(1) governs the scope and limits of discovery between parties: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Relevance is construed broadly at the discovery stage." *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012). Beyond being relevant, information sought in discovery must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Employment discrimination claims "may require indirect, inferential, or circumstantial evidence," which emphasizes the need for broad discovery. *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 516 (D. Minn. 1997). "[W]here an individualized claim of disparate treatment is alleged, the discovery of information concerning other employees should be limited to employees who are similarly situated to the Plaintiff." *Id.* at 516–17.

In addition, discovery may be limited to a "reasonable period," which may extend to several months or even years on either side of the alleged discrimination. *Id.* at 517.

Defendant has agreed that the 11 ABLs who had the same job as Plaintiff and reported to McCrary are within the scope of discovery. As to the 68 female sales representatives,[5] the Court finds they should not be included in the scope of discovery. Plaintiff was an ABL and sales manager and thus held a different position than the 68 female sales representatives. Plaintiff also reported directly to McCrary, whereas the 68 female sales representatives reported to other ABLs and did not report directly to McCrary. (*See* Def.'s Ex. 4 ¶ 7.) For information to be relevant and discoverable, employees must be "similarly situated in all relevant respects," which means they "must have dealt with the same supervisor" and "have been subject to the same standards." *See Henne v. Great River Reg'l Libr.*, No. 19-CV-2758 (WMW/LIB), 2021 WL 6804537, at *10 (D. Minn. Aug. 12, 2021) (quotations omitted). Plaintiff has not shown that the sales representatives were sufficiently similar to her to warrant including them in the scope of relevant discovery.

Turning to the nature of the documents requested, Plaintiff asked for the following information from personnel files: information and documents regarding any formal or informal coaching, discipline, corrective action plans, performance reviews, any BPOs or actions submitted or filed by or against the individuals, and wage records, including documentation of any pay raises. (Pl.'s Mem. Supp. at 21–22.) Plaintiff does not explain why these documents are relevant or proportional, but argues only in general that they are

---

[5] Of the 130 sales representatives who reported to CV ABLs, approximately 68 were female. (Def.'s Ex. 4 ¶ 7, Dkt. No. 96-4.)

"reasonable." Defendant, on the other hand, points out that Plaintiff has not alleged unlawful discipline, wrongful termination, or a wage claim, and argues that information relating to employment practices other than those alleged in this case are not relevant. (Def.'s Mem. Opp'n at 22.) The Court agrees with Defendant and so limits the scope of information to be produced to BPO reports, NBPO reports, Inquiries, lawsuits, or administrative charges against McCrary or Zeller that alleged discrimination, reprisal, retaliation, or hostile work environment.

The Court further determines that the relevant timeframe for this discovery is from January 1, 2015 to August 9, 2020. Plaintiff began working for Defendant in January 2015 and alleges she experienced discriminatory treatment throughout her employment. Plaintiff's employment ended on August 9, 2019. In light of this date and McCrary's retirement sometime in 2019, the Court finds one year after Plaintiff's end-date to be relevant and proportional.

There is one additional, specific category of discovery to discuss. Plaintiff has asked for discovery about reports concerning McCrary and Avery that are listed on Exhibit 3 to Boyle's Declaration (Dkt. No. 92). Some of the allegations involve discrimination and retaliation, but other reports are for "inappropriate behavior," and other reports predate Plaintiff's employment. Plaintiff contends that information about the reports is relevant to the issue of damages, citing a Hennepin County state district court case, *Finch v. Abbott Northwestern Hospital*, No. 27-CV-18-3271, 2019 WL 4889526, at *3 (Minn. Dist. Ct. Sept. 6, 2019). *Finch* remarked that an employer's "long-standing practice of discriminatory practices" can be relevant to the issue of treble damages, citing *Kohn v. City*

6

*of Minneapolis Fire Dep't*, 583 N.W.2d 7, 15 (Minn. Ct. App. 1998). In *Kohn*, the Minnesota Court of Appeals reviewed a state district court's decision to treble the compensatory damages awarded to the plaintiff. *Id. Kohn* noted that Minn. Stat. § 363.071, subd. 2,[6] authorized a court to treble compensatory damages "without requiring findings to support the determination." *Id.* The court mentioned the defendant's "long-standing practice of discriminatory employment practices," but the basis for the treble-damages award was the discrimination the plaintiff suffered. *Id.* ("The district court cited the damages Kohn suffered based on discrimination by MFD, which had a long-standing practice of discriminatory employment practices."). Indeed, the support for finding that the Minneapolis Fire Department had a long history of discriminatory employment practices was not discovery about other employees, but prior case authority including a 1979 consent order. *Id.* at 9. Thus, *Kohn* does not support Plaintiff's request for the reports about McCrary and Avery, and neither, by extension, does *Finch*. Plaintiff has not persuaded the Court that the reports listed on Exhibit 3 to Boyle's Declaration are relevant and proportional to the issue of damages, and the Court therefore denies her request for those reports.

**II.    Defendant's Motion to Compel**

    **A.    Plaintiff's Communications with Former and Current Employees of Defendant from August 1, 2019, to Present**

Defendant seeks communications between Plaintiff and all former and current employees of Defendant. Plaintiff agreed to identify the former coworkers with whom she

---

[6] This provision is now codified at Minn. Stat. § 363A.29, subd. 4.

7

stays in touch and to provide a list of the communications. However, she later admitted at her deposition that she had not personally searched for any text messages or emails with former or current employees. She also claimed she could not retrieve any text messages dated prior to March 1, 2022, from her cell phone, despite retaining an ESI vendor.

Defendant's motion to compel the communications between Plaintiff and former and current employees of Defendant is granted to the extent that the communications are relevant to her work at Defendant or otherwise to her claims and defenses in this case. Plaintiff has agreed to produce these communications, and the Court finds the communications are relevant and proportional. *See Gacek v. Owens & Minor Distrib., Inc.*, No. 09-CV-3202 (PAM/LIB), 2010 WL 11534503, at *8 (D. Minn. Oct. 21, 2010). The Court's decision includes communications Plaintiff sent using her Merck email address, as long as those emails are relevant to her work at Defendant or otherwise to her claims and defenses in this case. The Court encourages Plaintiff to work with Defendant on an additional forensic search of her phone so to avoid potential motion practice over spoliation.

   **B.**  **Plaintiff's Social Media Data from January 1, 2016, to Present**

Defendant seeks photographs, comments, updates, posts, and videos posted by Plaintiff on Facebook, Twitter, LinkedIn, Instagram, Snapchat, and any other social networking or internet site from January 1, 2016 to the present. In response, Plaintiff objected on grounds of overbreadth, undue burden, relevance, and proportionality, but produced 35 pages of Facebook postings related to her employment at Defendant and her

claims in this case. Defendant argues that additional social media data is relevant to Plaintiff's emotional distress damages.

In *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340 (D. Minn. 2011)—a case cited by Plaintiff—the court granted in part a motion to compel social media content, finding that information on social media sites could be relevant to emotional distress damages. *Id.* at 344 ("[G]iven that plaintiff has placed her employment with and termination of employment from defendant, along with her mental disability and emotional state at issue, the defendant is entitled to information from her social media websites that bear on these topics, including other stressors in plaintiff's life that could account for the emotional distress she is now claiming was due to her treatment at and termination of employment from defendant."). The court considered, on one hand, "the simple fact that a claimant has had social communications is not necessarily probative of the particular mental and emotional health matters at issue in the case. Rather, it must be the substance of the communication that determines relevance." *Id.* (quoting *EEOC v. Simply Storage Management*, 270 F.R.D. 430, 435 (S.D. Ind. 2010)). On the other hand, the plaintiff had placed her emotional state at issue, and other stressors in her life could have caused or contributed to her emotional distress. *Id.* Accordingly, the court ordered the plaintiff's counsel to review all of the plaintiff's social media content for the relevant period and produce any data that referred to or revealed

> (1) any emotion, feeling or mental state, including but not limited to any reference of depression, anxiety or mental disability; (2) to any events that could reasonably be expected to produce a significant emotion, feeling, or mental state; (3) defendant, plaintiff's employment at defendant or

termination of employment from defendant; and (4) plaintiff's search for employment following her termination of employment from defendant.

*Id.*

The Court finds this a sensible approach to adopt here. Plaintiff is seeking damages for emotional distress, and some of her social media content is likely relevant to her emotional state. All of Plaintiff's social media data is not proportional to the needs of the case, however. Accordingly, Plaintiff's counsel shall review Plaintiff's social media content from January 1, 2016 to the present and produce any communications or other content that refers to or reveals the four categories of information described above.

Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Lisa Krapf's Motion to Compel Discovery and Motion Pursuant to Rule 30(d)(3) (Dkt. No. 70) is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant Novartis Pharmaceuticals Corporation's Motion to Compel Discovery, for Additional Time to Complete Plaintiff's Deposition, and for Sanctions (Dkt. No. 72) is **GRANTED IN PART** and **DENIED IN PART**; and

3. Any discovery compelled herein must be produced within 14 days.

Date: July 6, 2022            *s/ John F. Docherty*
                              JOHN F. DOCHERTY
                              United States Magistrate Judge